**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **TYRON L. JOHNSON, individually and on behalf of all others similarly situated,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**PREMIER ENTERTAINMENT AC, LLC d/b/a/ BALLY'S ATLANTIC CITY,**<br><br>**Defendant.** | **CIVIL ACTION**<br><br>**CASE NO.**<br><br>**CLASS/COLLECTIVE ACTION**<br><br>**JURY TRIAL DEMANDED**<br><br>***Electronically Filed*** |

## CLASS AND COLLECTIVE ACTION COMPLAINT

Plaintiff Tyron L. Johnson ("Plaintiff"), individually and on behalf of all others similarly situated, brings this Class and Collective Action Complaint against Defendant Premier Entertainment AC, LLC d/b/a Bally's Atlantic City ("Defendant"), and hereby states and alleges as follows:

## NATURE OF THE CLAIMS

1. Plaintiff worked as a table games dealer for Defendant, a casino located in Atlantic City, New Jersey.

2. At all relevant times, Defendant required Plaintiff and all other table games dealers to pool all their tips. In other words, dealers could not retain their tips from patrons and instead were required to pool them among all other dealers. For the most part, Defendant would then redistribute those tips to all dealers based on when and how much they worked, subject to caveats discussed below.

3. Defendant also principally paid table games dealers like Plaintiff through the tip credit. In other words, Defendant relied on the Fair Labor Standards Act (FLSA) and New Jersey State Wage and Hour Law (NJWHL) minimum wage exception that allows an employer to credit

some of the tips an employee earns against the minimum wage the employee is owed. For the reasons explained below, Defendant did not meet those requirements. Defendant's mandatory tip pool was invalid and the use of the tip credit was unlawful, which means Defendant has not paid table games dealers minimum wage (or overtime to the extent they worked over 40 hours in a workweek) under federal and state law.

4. Defendant's tip pooling arrangement is unlawful for two reasons. First, Defendant's use of the tip credit is unlawful under New Jersey law because of the way Defendant structures its table games dealers' work. The typical string (or schedule) for a table games dealer is 60 minutes of time dealing followed by a 20-minute rest period. All of this time is "on-the-clock" because the dealers remain under Defendant's control for the duration of the so-called rest period. Defendant takes a tip credit for all of this time.

5. Dealers are practically unable to leave the premises during this 20-minute rest period and Defendant precludes them from working on the floor. As a result, dealers are precluded from making tips during the rest period because they are not at the tables. Despite this, Defendant claims a tip credit for this time. In reality, the 20-minute rest period benefits Defendant because it ensures that the dealer can continue doing quick, mistake-free math while dealing. The upshot of this structure is that, before accounting for idle time, pre- and post-shift time, and waiting time, table games dealers automatically spend 25% of their time on non-tipped work. Importantly, Defendant includes all dealer time in the tip pool, including the non-tipped work.

6. This violates the NJWHL. New Jersey law makes clear that this non-tipped time is not eligible for the tip credit because it exceeds 20% of the dealers' working time in every workweek. Importantly, it also voids the tip pool entirely. New Jersey law treats dealers as non-tipped workers who do not customarily and regularly receive tips for the time where, as here, the

dealers spend more than 20% of the workweek on non-tipped work. Defendant's decision to include this time in the tip pool means that Defendant is requiring table games dealers to pool tips with employees who do not customarily and regularly receive tips while also claiming a tip credit, which voids the tip pool and the tip credit under both the NJWHL and the FLSA.

7. Second, Defendant has created a mandatory tip pool for dealers the carries significant administrative costs. One consequence of Defendant's policy is that there is a material cost to counting and redistributing those tips. That cost is a product of Defendant's decision and should be borne by Defendant. Instead, Defendant has retained dealer tips to defray its own expenses by requiring the dealers to work off-the-clock and pay them tips from the pool for performing the administrative function of counting tips. This voids the tip pool and the tip credit under both the NJWHL and the FLSA.

## JURISDICTION AND VENUE

8. Federal question jurisdiction over the FLSA claims of Plaintiff and others similarly situated is based on 29 U.S.C. § 216(b) and 28 U.S.C. § 1331.

9. Supplemental jurisdiction over the state law claims of Plaintiff and others similarly situated is based on 28 U.S.C. § 1367, in that the state law claims are so related to the FLSA claims that they form part of the same case and controversy.

10. There is also subject matter jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1332(d) in that there are at least 100 putative class members, there is minimal diversity, and there is at least $5,000,000 in controversy.

11. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims set forth herein occurred in this judicial district.

## PARTIES

12. Plaintiff is a resident of Atlantic City, New Jersey.

13. Plaintiff was hired by Defendant in June 2022 to work as a table games dealer. Between June 2022 and through March 2023, Plaintiff worked as a table games dealer earning a direct cash wage of approximately $5 to $6 per hour plus tips. All of Plaintiff's tips earned as a dealer were required to be pooled with other dealers. Plaintiff's pay rate was below the minimum wage under both federal and New Jersey law. Plaintiff's Consent to Join is attached as Exhibit 1.

14. Defendant is a limited liability corporation organized under the laws of New Jersey, with its principal place of business located in New Jersey. Defendant is registered to do business and does conduct business in New Jersey.

15. At all relevant times, Defendant has been an enterprise engaged in commerce or in the production of goods or services for commerce within the meaning of 29 U.S.C. § 203(s)(1), and, upon information and belief, has had an annual gross volume of sales made or business done of not less than $500,000.

16. At all relevant times, Defendant was the employer of Plaintiff, and all other similarly situated employees working at the casino property.

## OVERVIEW OF PLAINTIFF'S CLAIMS

### Defendant's Tip Pooling and Scheduling Practices

17. Defendant operates a casino. Defendant's casino features dozens of table games (*e.g.*, blackjack, roulette, craps, *etc.*), which are staffed by table games dealers.

18. Defendant employs hundreds of table games dealers at any given time, most of whom, like Plaintiff, are paid a direct cash wage below New Jersey's minimum wage of $15.49 per hour. In other words, Defendant pays table games dealers pursuant to the tip credit provisions

of the FLSA and NJWHL and then uses customer tips to make up the difference between the sub-minimum direct cash wage and the minimum wage.

19. Defendant pays table games dealers the tip credit rate for all hours worked in the dealer capacity.

20. Defendant requires all table games dealers to pool their tips. Although table games dealers may have some nominal input on the structure of the pool through the toke committee, the pool is mandated by Defendant and all table games dealers must contribute all the tips they receive from patrons to the pool. Defendant also mandates the principal rules of the tip pool like the distribution formula and the time for which the pool is used to pay.

21. Defendant also sets the "string" (*i.e.*, the working schedule during shifts) for table games dealers. The normal string for table games dealers is 60 minutes of time at the table games followed by a 20-minute mandated rest period away from the table games and off the casino floor. Table games dealers are not permitted to work the tables during these 20-minute periods and are thus unable to earn tips. Dealers are unable to leave the casino property during these short 20-minute periods. Defendant acknowledges the time is compensable and the time is paid, but it is paid at the tip credit rate. Before accounting for pre- and post-shift work, any idle time, and any other non-tip producing time, table games dealers are automatically precluded from earning tips during 25% of their working time. Despite this, Defendant pays all this time at the tip credit rate.

22. Plaintiff and other table games dealers also spend a considerable amount of their time idle waiting for customers at the tables, attending pre- and post-shift meetings, and other non-tip producing tasks. Defendant pays all of this time at the tip credit rate.

23. All the time spent by the dealers is included in the tip pool formula as hours eligible for tips from the pool.

24. As a matter of course and logic, tables games dealers spend well more than 20% of their working time paid at the tip credit rate doing tasks for which they could not possibly be paid tips. Defendant knows and has known dealers are spending more than 20% of their time on non-tip producing tasks and has chosen to require them to pool their tips and to pay them pursuant to the tip credit anyway.

**Defendant's Tip Pooling and Scheduling Practices Violate the NJWHL**

25. Under the NJWHL, an employer may, in certain circumstances, take a "tip credit" toward its state minimum wage obligations for tipped employees. Pursuant to the explicit language of New Jersey law, a tip credit may not be taken unless such employee is informed by the employer of the "amount of the cash wage that is to be paid to the tipped employee," "the amount of the tip credit," "[t]hat all tips received by the tipped employee must be retained by the employee, except for a valid tip pooling arrangement limited to employees who customarily and regularly receive tips," and that the "tip credit shall not apply to any employee who has not been informed of the requirements." N.J. Admin. Code § 12:56-3.5(q). "N.J.A.C. 12:56-3.5(q) is effectively a wholesale adoption of the FLSA's tip credit notification requirement set forth in 29 C.F.R. § 531.59(b)." *Hall v. Adelphia Three Corp.*, No. CV 21-01106, 2023 WL 1927386, at *8 (D.N.J. Jan. 31, 2023); *see also* 29 C.F.R. § 531.59 The tip wage credit.

26. NJWHL allows for valid tip pooling arrangements for employees for which the employer takes a tip credit if, among other provisions, is "limited to employees who customarily and regularly receive tips." N.J. Admin. Code § 12:56-3.5(q). This mirrors the federal regulation, which states an "employer may require an employee for whom the employer takes a tip credit to contribute tips to a tip pool only if it limited to employees who customarily and regularly receive tips." 29 C.F.R. § 531.54(c).

27. "[T]he FLSA and the NJWHL are interpreted in parallel because the NJWHL is patterned on the FLSA." *Casco v. Ponzios RD, Inc.*, No. CV 16-2084 (RBK/JS), 2019 WL 1650084, at *7 (D.N.J. Apr. 17, 2019). However, the FLSA contains a "savings clause" which states: "No provision of this chapter or of any order thereunder shall excuse noncompliance with any Federal or State law or municipal ordinance establishing a minimum wage higher than the minimum wage established under this chapter or a maximum work week lower than the maximum workweek established under this chapter." 29 U.S.C. § 218(a). "This section expressly contemplates that workers covered by state law as well as FLSA shall have any additional benefits provided by the state law—higher minimum wages; or lower maximum work week." *Keeley v. Loomis Fargo & Co.*, 11 F. Supp. 2d 517, 520 (D.N.J. 1998) (quoting *Williams v. W.M.A. Transit Co.*, 472 F.2d 1258, 1261 (D.C. Cir. 1972)).

28. To carry out the NJWHL, New Jersey's regulations provide that "[i]n order for the employer to claim the maximum tip credit . . . , the employer must demonstrate that the employee received at least that amount in actual tips." N.J. Admin. Code § 12:56-3.5(s). So "[i]f the employee received less than the maximum tip credit amount in tips, the employer is required to pay the balance, so that the employee receives at least the minimum hourly wage." *Id.* Starting January 1, 2025, New Jersey minimum wage is $15.49.[1] Currently, the maximum tip credit is $9.87. N.J. Admin. Code § 12:56-3.5(a).

29. New Jersey implemented a regulation on tipped employees performing significant non-tipped work to ensure those workers are paid minimum wage for such time. "Where a tipped employee spends a substantial amount of time (in excess of 20 percent in the workweek)

[1] New Jersey's minimum wage chart available here: https://www.nj.gov/labor/wageandhour/assets/PDFs/minimumwage_postcard.pdf

performing related duties, no tip credit may be taken for the time spent in such duties." *See* N.J. Admin. Code § 12:56-3.5(n).

30. Here, Defendant requires Plaintiff and other dealers to work for less than minimum wage for—at a bare minimum just based on the strings set by the company—25% of their time for before consideration of pre- and post-shift work, idle time, and time spent on the casino floor but not at the tables.

31. Defendant's 20-minute mandated rest period is not part of the tipped occupation for table games dealers. Defendant precludes the dealers from earning tips during this window. Further, the mandated 20-minute period off the casino floor is purely for the benefit of Defendant so that the dealers do not make mental mistakes costing the casino money when dealing. The time is not the dealer's own time—it is not long enough to be a *bona fide* meal period and the dealers are unable to leave the property (*e.g.*, it can take five minutes just to walk cross the casino floor). Defendant recognizes this because the time is on-the-clock and paid, albeit at the sub-minimum wage, tip credit rate. Quixotically, Defendant pays dealers the tip credit rate for this time, but they simultaneously preclude them from earning tips because they are not permitted to be on the casino floor. As a result, Defendant requires the dealers to stay on-the-clock for less than minimum wage while they await their time to return to the floor to do the job that allows them to earn tips from patrons. On top of that, Defendant's arrangement forces dealers to subsidize one another's minimum wages because, for at least 25% of the time included in the tip pool, dealers are paying tips to fellow dealers whom the casino is precluding from dealing and earning tips.

32. Under the NJWHL, these workers spend well over 20% of their time on non-tipped work. All of the time these workers spend on these breaks must be paid at the full minimum wage. *See* N.J. Admin. Code § 12:56-3.5(n). Further, because New Jersey law does not recognize these

workers as tipped workers with respect to that time, Defendant's decision to include this time in the mandatory tip pool voids the tip pool, including the ability to claim a tip credit for workers subject to the mandatory tip pool.

**Defendant's Tip Pooling and Scheduling Practices Violate the FLSA**

33. For many of the same reasons, the above facts likewise violated the FLSA.

34. District courts look to the Department of Labor's historic interpretation of the dual jobs regulation to preclude an employer from claiming a tip credit for time spent on non-tip producing work that exceeds 20% of the worker's time on-the-clock. Despite the Fifth Circuit's vacatur of the 2021 regulation, Courts have "recently found that the 1988 Department of Labor Guidance and the 80/20 Rule are still persuasive authorities." *Thomas v. Morning Chef, LLC*, No. 2:23-CV-02719, 2025 WL 2721177, at *5 (S.D. Ohio Sept. 24, 2025); *see also Hallman v. Flagship Rest. Grp., LLC*, 762 F. Supp. 3d 830, 841 (D. Neb. 2025) (After the Fifth Circuit's vacatur of the 2021 regulation, "the 2019 version of the Dual Jobs Regulation and pre-80/20 Rule circuit caselaw control.").

35. Here, for the reasons stated above, Defendant required table games dealers to spend at least 25% of their working time on mandated rest periods during which the dealer is precluded from earning tips. The table games dealers also have significant idle time at the tables during which they are not earning tips as well as pre- and post-shift time spent on tasks like dealer meetings. For the same reasons, the table games dealers are not "tipped employees" and not "customarily and regularly tipped" for purposes of the time exceeding the 20% threshold. 29 U.S.C. § 203(m), (t). Thus, Defendant's decision to include this time in the mandatory tip pool voids the tip pool, including the ability to claim a tip credit for workers subject to the mandatory tip pool. *Id.*

**Defendant Retains Dealers' Tips to**
**Defray Administrative Costs in Violation of the NJWHL and the FLSA**

36. Defendant requires its dealers to pool all of their tips. In other words, when a dealer is handed a tip from a patron, the dealer places that tip into the tip (or toke) box where it is pooled with all others dealers' tips. At the end of every day, the tips are counted.

37. Every day, Defendant requires the dealers to count the tips.

38. Although Defendant created the system that required this work, Defendant did not entirely pay dealers for this work. Instead, Defendant required the dealers to pay their colleagues for this work out of the tip pool.

39. Put differently, Defendant created a mandatory tip pool that required dealers to pool their tips and then redistribute them based on time worked. However, a natural ramification of Defendant's mandatory tip pooling policy is that the tips must be counted, verified, and redistributed. This cost is attendant to Defendant's decision to implement the tip pooling policy. However, instead of paying that administrative expense itself, it has syphoned more money from the dealer's tip pool to do so. This is plainly unlawful under the NJWHL. *See* N.J. Admin. Code § 12:56-3.5(g) ("The employer is prohibited from using an employee's tips, whether or not it has taken a tip credit, for any reason other than as wages or in furtherance of a valid tip pool; this includes, a prohibition against the employer using an employee's tips to pay any portion, however small, of the fee charged to the employer by a credit card company or other financial institution for the use of credit or debit cards in its business, including the processing of such credit or debit card transactions.").

40. For the same reasons this conduct violates the NJWHL, it likewise violates the FLSA. *See* 29 U.S.C. § 203(m)(2)(B) ("An employer may not keep tips received by its employees for any purposes…").

## COLLECTIVE AND CLASS ACTION ALLEGATIONS

41. Plaintiff brings Counts I (the NJWHL claim) and II (the NJWPL claim) for violations of New Jersey's tip credit and tip pooling provisions as a Rule 23 class action:

> **Rule 23 Class:** All persons currently or formerly employed by Defendant as table games dealers who participated in the dealers' tip pool for at least one workweek from six years prior to the filing of the operative Complaint through the date of the Court's class certification order.

42. Plaintiff brings Count III, the FLSA claim arising out of Defendant's violation of the FLSA's tip credit and tip pooling provisions as an "opt-in" collective action pursuant to 29 U.S.C. § 216(b) on behalf of themselves and the following collective:

> **FLSA Collective:** All persons currently or formerly employed by Defendant as table games dealers who participated in the dealers' tip pool for at least one workweek from three years prior to the filing of the operative Complaint through the date of the Court's collective certification order.

43. Plaintiff's NJWHL and NJWPL claims satisfy the numerosity, commonality, typicality, adequacy, and superiority requirements of a class action pursuant to Fed. R. Civ. P. 23.

44. The class contains, at least, hundreds of class members. As a result, joinder of all class members in a single action is impracticable. Class members may be informed of the pendency of this action through regular mail, e-mail, and/or posting of an approved notice. All of the information necessary to provide this notice is in the possession of Defendant.

45. There are common questions of fact and law to the class that predominate over any questions affecting only individual class members. The questions of law and fact common to the classes arising from Defendant's actions include, without limitation, the following:

a. Whether Defendant required table games dealers to pool their tips;

b. Whether Defendant paid some table games dealers pursuant to the tip credit;

c. Whether Defendant required table games dealers to count tips and paid them

for it from the tip pool;

d. Whether Defendant required table games dealers to spend, at least, 20% of their time on mandated rest periods;

e. Whether this mandated on-the-clock rest time can be paid pursuant to the tip credit when it exceeds 20% of the workweek;

f. Whether Defendant's inclusion of the mandated rest time in the tip pool voided the tip pool and the tip credit for pool participants; and

g. Whether Defendant's use of tip pool funds to defray its own expenses of operating a tip pool voided the tip pool and the tip credit for pool participants.

46. The questions set forth above predominate over any questions affecting only individual persons, and a class action is superior with respect to considerations of consistency, economy, efficiency, fairness, and equity to other available methods for the fair and efficient adjudication of the state law claims.

47. Plaintiff's claims are typical of those of the class in that class members have been employed in the same or similar positions as Plaintiff and were subject to the same or similar unlawful practices as Plaintiff.

48. A class action is the superior method for the fair and efficient adjudication of Plaintiff's claims. Defendant has acted or refused to act on grounds generally applicable to the classes. The presentation of separate actions by individual class members could create a risk of inconsistent and varying adjudications, establish incompatible standards of conduct for Defendant, and/or substantially impair or impede the ability of class members to protect their interests.

49. Plaintiff is an adequate representative because he is a member of each of the classes

he seeks to represent, and his interests do not conflict with the interests of the members of those classes. The interests of the members of the classes will be fairly and adequately protected by Plaintiff and his undersigned counsel, who are experienced prosecuting complex wage and hour, employment, and class action litigation.

50. Maintenance of this action as a class action is a fair and efficient method for adjudication of this controversy. It would be impracticable and undesirable for each member of the classes who suffered harm to bring a separate action. In addition, the maintenance of separate actions would place a substantial and unnecessary burden on the courts and could result in consistent adjudications, while a single class action can determine, with judicial economy, the rights of all class members.

**COUNT I – Violation of the New Jersey Wage and Hour Law**

51. Plaintiff and the putative class members have been entitled to the rights, protections, and benefits provided under the NJWHL, N.J. Stat. Ann. § 34:11-56a, *et seq.*

52. The NJWHL regulates, among other things, the payment of minimum wage and overtime wages by employers, subject to limited exceptions not applicable herein, and provide or have provided for during part or all of the applicable limitations period for a minimum wage consistent with that provided for under federal law. N.J. Stat. Ann. § 34:11-56a4.

53. During all times relevant to this action, Defendant was the "employer" of Plaintiff and the class members within the meaning of the NJWHL. N.J. Stat. Ann. § 34:11-56a1.

54. During all times relevant to this action, Plaintiff and the class members were Defendant's "employees" within the meaning of the NJWHL. N.J. Stat. Ann. § 34:11-56a1.

55. Plaintiff and the class members are covered, non-exempt employees within the meaning of the NJWHL. Accordingly, employees are entitled to be paid at least minimum wage for all hours worked in each workweek. N.J. Stat. Ann. § 34:11-56a4.

56. Pursuant to the NJWHL, employees are also entitled to be compensated at a rate of not less than one and one-half times the regular rate at which such employees are employed for all work performed in excess of 40 hours in a workweek. N.J. Stat. Ann. § 34:11-56a4(b-1).

57. Although the NJWHL contains some exceptions (or exemptions) from the minimum wage and overtime pay obligations, none of those exceptions (or exemptions) applies here. N.J. Stat. Ann. § 34:11-56a4.

58. Plaintiff and the class members are victims of uniformly applied scheduling and tip pooling policy that resulted in the failure to pay minimum wages and overtime wages for each member of the tip pool due to the forfeiture of the tip credit for the reasons set out at length above.

59. Defendant violated the NJWHL by failing to pay Plaintiff and all others similarly situated minimum wages for all hours worked in a workweek. Defendant also violated the NJWHL by failing to pay overtime at 1.5 times the regular rate (of at least minimum wage) for all hours over 40 in a workweek.

60. Specifically, as set out at length above, Defendant paid Plaintiff and other similarly situated table games dealers pursuant to the tip credit and required them to pool their tips.

61. Defendant then required table games dealers to perform excessive non-tipped work exceeding 20% of their workweek. Defendant was not entitled to claim a tip credit for that time but did so anyway. Defendant also required those workers to be paid tips from the tip pool for that time despite that work not constituting part of the tipped occupation and those workers not being customarily and regularly tipped employees for that work. As a result, Defendant created and mandated participation in an unlawful tip pool. Defendant thus forfeits the tip credit applied to each worker required to participate in the pool. Likewise, Defendant retained tip pool funds by using them to defray the costs of the pool, which Defendant requires. This also results in forfeiture

of the tip credit and mandates return of the misappropriated funds. *See* N.J. Admin. Code § 12:56-3.5(n); 29 CFR § 531.56.

62. Plaintiff and the class members are entitled to damages equal to all unpaid minimum and overtime wages due within six years preceding the filing of this Complaint, plus periods of equitable tolling, less any amount actually paid to the employees by Defendant. N.J. Stat. Ann. § 34:11-56a25.1.

63. Plaintiff and the class are also entitled to the amount of tips that Defendant used to pay workers for time spent on non-tipped tasks. N.J. Stat. Ann. § 34:11-56a25.1.

64. Plaintiff and the class members are entitled to "an additional amount equal to not more than 200 percent of the amount of the unpaid minimum wages or wages lost due to retaliatory action as liquidated damages." N.J. Stat. Ann. § 34:11-56a25.1.

65. Plaintiff and the class members are also entitled to an award of post-judgment interest at the applicable legal rate.

66. Defendant is liable to Plaintiff and the class members for costs and reasonable attorney fees incurred in this action. N.J. Stat. Ann. § 34:11-56a25.1.

WHEREFORE, Plaintiff prays for the following relief:

a. Award Plaintiff and class members damages for unpaid minimum wages, misappropriated tips, and any other compensatory damages available under N.J. Stat. Ann. § 34:11-56a25.1;

b. Award Plaintiff and class members post-judgment interest;

c. Award Plaintiff's and class members' counsel attorneys' fees and costs as allowed by N.J. Stat. Ann. § 34:11-56a25.1; and

d. Award Plaintiff and the class members such other relief as the Court deems

fair and equitable.

**<u>COUNT II – Violation of the New Jersey Wage Payment Law</u>**

67. Plaintiff and the putative class members have been entitled to the rights, protections, and benefits provided under the New Jersey Wage Payment Law ("NJWPL"), N.J. Stat Ann. § 34:11-4.1 *et seq.*

68. The NJWPL regulates, among other things, the payment of and collections of wages due. N.J. Stat Ann. § 34:11-4.1 *et seq*.

69. During all times relevant to this action, Defendant was the "employer" of Plaintiff and the class members within the meaning of the NJWPL. N.J. Stat Ann. § 34:11-4.1(a).

70. During all times relevant to this action, Plaintiff and the class members were Defendant's "employees" within the meaning of the NJWPL. N.J. Stat Ann. § 34:11-4.1(b)).

71. Paying an employee less than minimum wage violates the NJWPL. N.J. Stat. Ann. § 34:11-4.10. Thus, the same conduct that violated the NJWHL discussed at length above likewise violates the NJWPL.

72. Plaintiff and the class members are entitled to liquidated damages equal to 200 percent of the wages lost or of the wages due within six years preceding the filing of this Complaint, plus periods of equitable tolling, less any amount actually paid to the employees by Defendant. N.J. Stat. Ann. § 2A:14-1; *see also Meyers v. Heffernan*, No. CIV.A. 12-2434 MLC, 2014 WL 3343803, at *8 (D.N.J. July 8, 2014) ("the Court finds that a private cause of action under the [New Jersey Wage Payment Law, N.J. Stat. § 34:11-4.1 *et seq.*] is subject to the six-year statute of limitations provided by N.J.S.A. 2A:14–1 for claims for breach of contract and other economic harm").

73. Plaintiff and the class members are also entitled to an award of post-judgment interest at the applicable legal rate.

74. Defendant is also liable to Plaintiff and the class members for costs and reasonable attorney fees incurred in this action. N.J. Stat. Ann. § 34:11-4.10(c).

WHEREFORE, Plaintiff prays for the following relief:

a. Award Plaintiff and class members damages for unpaid wages under N.J. Stat Ann. § 34:11-4.10;

b. Award Plaintiff and class members post-judgment interest;

c. Award Plaintiff's and class members' counsel attorneys' fees and costs as allowed by N.J. Stat Ann. § 34:11-4.10; and

d. Award Plaintiff and the class members such other relief as the Court deems fair and equitable.

**COUNT III – Violation of the Fair Labor Standards Act**

75. At all times material herein, Plaintiff and all others similarly situated have been entitled to the rights, protections, and benefits provided under the FLSA, 29 U.S.C. §§ 201, *et seq*.

76. The FLSA regulates, among other things, the payment of minimum wage and overtime pay by employers whose employees are engaged in interstate commerce, or engaged in the production of goods for commerce, or employed in an enterprise engaged in commerce or in the production of goods for commerce. 29 U.S.C. § 206(a); 29 U.S.C. § 207(a)(1).

77. Defendant is subject to the minimum wage and overtime pay requirements of the FLSA because they are enterprises engaged in interstate commerce and its employees are engaged in commerce.

78. During all relevant times to this action, Defendant was the "employer" of Plaintiff and all similarly situated employees within the meaning of the FLSA. 29 U.S.C. § 203(d).

79. During all times relevant to this action, Plaintiff and all similarly situated employees were Defendant's "employees" within the meaning of the FLSA. 29 U.S.C. § 203(e).

80. Plaintiff and all similarly situated employees are covered, non-exempt employees within the meaning of the FLSA. Accordingly, Plaintiff and all similarly situated employees must be paid minimum wage in accordance with 29 U.S.C. § 206.

81. Pursuant to the FLSA, employees are also entitled to be compensated at a rate of not less than one and one-half times the regular rate at which such employees are employed for all work performed in excess of 40 hours in a workweek. 29 U.S.C. § 207(a).

82. Although the FLSA contains some exceptions (or exemptions) from the minimum wage and overtime requirements, none of those exceptions (or exemptions) applies here.

83. Plaintiff and putative class members are victims of uniformly applied scheduling and tip pooling policy that resulted in the failure to pay minimum wages and overtime wages for each member of the tip pool due to the forfeiture of the tip credit.

84. Plaintiff and all similarly situated employees are entitled to damages equal to the mandated minimum wage and overtime premium pay within the three (3) years preceding the filing of the initial Complaint, plus periods of equitable tolling, because Defendant acted willfully and knew, or showed reckless disregard of whether its conduct was prohibited by the FLSA.

85. Defendant has acted neither in good faith nor with reasonable grounds to believe that its actions and omissions were not a violation of the FLSA, and as a result, Plaintiff and other similarly situated employees are entitled to recover an award of liquidated damages in an amount equal to the amount of unpaid wages as described by Section 16(b) of the FLSA, codified at 29 U.S.C. § 216(b). Alternatively, should the Court find Defendant acted in good faith or with reasonable grounds in failing to pay minimum wage and overtime compensation, Plaintiff and all similarly situated employees are entitled to an award of pre-judgment and post-judgment interest at the applicable legal rate.

86. As a result of these violations of the FLSA's minimum wage and overtime pay provisions, compensation has been unlawfully withheld by Defendant from Plaintiff and all similarly situated employees. Accordingly, pursuant to 29 U.S.C. § 216(b), Defendant is liable for the unpaid minimum wages and overtime premium pay along with an additional amount as liquidated damages, pre-judgment and post-judgment interest, reasonable attorneys' fees, and costs of this action

87. Defendant violated the FLSA by failing to pay Plaintiff and all others similarly situated minimum wages for all hours worked in a workweek.

88. Specifically, as set out at length above, Defendant paid Plaintiff and other similarly situated table games dealers pursuant to the tip credit and required them to pool their tips.

89. Defendant then required table games dealers to perform excessive non-tipped work exceeding 20% of their workweek. Defendant was not entitled to claim a tip credit for that time but did so anyway. Defendant also required those workers to be paid tips from the tip pool for that time despite that work not constituting part of the tipped occupation and those workers not being customarily and regularly tipped employees for that work. As a result, Defendant created and mandated participation in an unlawful tip pool. Defendant thus forfeits the tip credit applied to each worker required to participate in the pool. Likewise, Defendant retained tip pool funds by using them to defray the costs of the pool, which Defendant requires. This also results in forfeiture of the tip credit and mandates return of the misappropriated tips. 29 U.S.C. § 203(m), 216(b).

WHEREFORE, Plaintiff prays for the following relief:

a. Award Plaintiff and all similarly situated employees damages for unpaid minimum wages and overtime wages under 29 U.S.C. § 216(b);

b. Award Plaintiff and all similarly situated employees damages for

misappropriated tips under 29 U.S.C. § 216(b);

c. Award Plaintiff and all similarly situated employees liquidated damages under 29 U.S.C. § 216(b);

d. Award Plaintiff and all similarly situated employees pre-judgment and post-judgment interest as provided by law;

e. Award Plaintiff and all similarly situated employees attorneys' fees and costs under 29 U.S.C. § 216(b);

f. Award Plaintiff and all similarly situated employees such other relief as the Court deems fair and equitable.

**JURY DEMAND**

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff demands a jury trial as to all claims so triable.

Dated: March 10, 2026

s/ R. Andrew Santillo
**WINEBRAKE & SANTILLO, LLC**
R. Andrew Santillo, Esq.
(NJ ID #025512004)
Mark J. Gottesfeld, Esq.
(NJ ID #027652009)
Twining Office Center, Suite 211
715 Twining Road
Dresher, PA 19025
Telephone: 215-884-2491
Facsimile: 215-884-2492
asantillo@winebrakelaw.com
mgottesfeld@winebrakelaw.com

**STUEVE SIEGEL HANSON LLP**
George A. Hanson, Esq., *pro hac vice* forthcoming
Alexander T. Ricke, Esq., *pro hac vice* forthcoming
460 Nichols Road, Suite 200
Kansas City, Missouri 64112
Telephone: (816) 714-7100
Facsimile: (816) 714-7101
hanson@stuevesiegel.com

ricke@stuevesiegel.com

**McCLELLAND LAW FIRM, P.C.**
Ryan L. McClelland, Esq., *pro hac vice* forthcoming
The Flagship Building
200 Westwoods Drive
Liberty, Missouri 64068-1170
Telephone: (816) 781-0002
Facsimile: (816) 781-1984
ryan@mcclellandlawfirm.com

**ATTORNEYS FOR PLAINTIFF**

# Exhibit 1

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **TYRON L. JOHNSON., individually and on behalf of all others similarly situated,** | **CIVIL ACTION** |
| **Plaintiff,** | **CASE NO.** |
| **v.** | **CLASS/COLLECTIVE ACTION** |
| **PREMIER ENTERTAINMENT AC, LLC d/b/a BALLY'S ATLANTIC CITY,** | **JURY TRIAL DEMANDED** |
| **Defendant.** | ***Electronically Filed*** |

**CONSENT TO JOIN**
**Fair Labor Standards Act of 1938, 29 U.S.C. § 216(b)**

**I CONSENT TO JOIN THIS LAWSUIT** as a Party Plaintiff seeking unpaid wages and/or overtime against Defendant Premier Entertainment AC, LLC d/b/a Bally's Atlantic City, and any other associated entities ("Defendants"). If this case does not proceed collectively, I also consent to join any subsequent action against any Defendant(s) for unpaid wages and/or overtime. By joining this lawsuit, I designate the Named Plaintiff(s) as my representatives, and allow them, to the fullest extent possible, to make decisions on my behalf concerning the case, the method and manner of conducting the case, including settlement, the entering of an agreement with Plaintiff's Counsel regarding payment of attorneys' fees and court costs, and all other matters pertaining to the this lawsuit to the fullest extent permitted by law. I understand that I will be bound by any ruling, settlement, or judgment whether favorable or unfavorable. For purposes of this lawsuit, I choose to be represented by Stueve Siegel Hanson LLP and McClelland Law Firm, P.C., and any other attorneys with whom they may associate.

03/10/2026
Date

Tyron L Johnson
Signature

Tyron J. Johnson
Full Legal Name (print)